UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LONNIE BJORNSON, | Court File No. 14-CV-04596-JRT-SER |
| Plaintiff, | |
| vs. | |
| SOO LINE RAILROAD COMPANY, a Minnesota Corporation, d/b/a CANADIAN PACIFIC RAILWAY, | PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO STRIKE AFFIRMATIVE DEFENSES PURSUANT TO FED. R. CIV. P. 12(f) |
| -and- | |
| GLENWOOD HOSPITALITY, INC., d/b/a SCOTTWOOD MOTEL, a Minnesota Corporation | |
| Defendants. | |

## INTRODUCTION

In its answer, Defendant Soo Line Railroad Company, d/b/a Canadian Pacific Railway, ("the railroad") raises several affirmative defenses that purport to bar or limit available damages in the above-captioned action.[1] Three of these affirmative defenses are unavailable as a matter of law and/or cannot be established by plausible facts in the railroad's pleading. Therefore, Plaintiff Lonnie Bjornson respectfully moves the Court to strike Affirmative Defenses Nos. 12, 14, and 15 in the railroad's answer pursuant to Fed. R. Civ. P. 12(f).

---

[1] *See* ECF No. 6 ("Answer of Defendant Soo Line Railroad Company d/b/a Canadian Pacific").

FRCP 12(f) Motion – Memorandum of Law

## F<small>ED</small>. R. C<small>IV</small>. P. 12(<small>F</small>) S<small>TANDARD</small>

Rule 12(f) of the Federal Rules of Civil Procedure provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Admittedly, the Eighth Circuit views such motions with disfavor. *See Stanbury Law Firm, P.A. v. Internal Revenue Serv.*, 211 F.3d 1059, 1063 (8th Cir. 2000). But caselaw is clear that this Court has "liberal discretion" under the rule. *Id.* And a Rule 12(f) motion to strike should be granted "if the result is to make a trial less complicated or otherwise streamline the ultimate resolution of the action." *Daigle*, 713 F.Supp.2d 822, 830 (D.Minn. 2010).

"A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977). But where a defense asserted is "foreclosed by prior controlling decisions or statutes," this Court may strike the defense as legally insufficient. *E.E.O.C. v. Product Fabricators, Inc.*, 873 F.Supp.2d 1093, 1097 (D.Minn. 2012) (quoting *Holt v. Quality Egg, LLC*, 777 F.Supp.2d 1160, 1169 (N.D.Iowa 2011)). "In that regard, the motion closely resembles a motion to dismiss in that all well plead allegations in the affirmative defense must be accepted as true and the Court must find that the defense at issue is legally insufficient." *Id.* (quotation omitted).

## ARGUMENT AND ANALYSIS

Here, the railroad raises three affirmative defenses that are legally insufficient or are otherwise appropriate subjects of a Rule 12(f) motion. The challenged defenses rely on statutes that do not stand for the proposition for which they are cited and ignore the relevant facts and/or interpreting caselaw. To put it simply, no set of facts presented or discovered by the railroad could limit or impair Bjornson's ability to recover full and complete relief in this case under the challenged defenses. For the reasons explained more fully below, the challenged defenses fail as a matter of law and should be stricken.

### I. Affirmative Defense No. 12 – "Plaintiff's claim is barred, in whole or in part, by operation of 49 U.S.C. § 20109(d)."

As part of Bjornson's efforts to resolve this matter without court involvement, Bjornson asked the railroad to either withdraw or provide clarification of the basis for the railroad's argument that Bjornson's claims were barred by operation of 49 U.S.C. § 20109(d), which articulates the procedures for enforcement actions under the whistleblower protections of the Federal Rail Safety Act ("FRSA").[2] In its December 12 letter responding to Bjornson's request that various affirmative defenses be withdrawn, the railroad refers to "the statute of

---

[2] *See* Declaration of Christopher W. Bowman in Support of Plaintiff's Memorandum of Law in Support of his Motion to Strike Affirmative Defenses Pursuant to Fed. R. Civ. P. 12(f) ("Bowman Dec."), filed contemporaneously herewith, Exhibit A.

limitations defenses asserted in Defense Nos. 12 and 13 under different provisions."[3]

As conceded by the railroad, the statute of limitations defense is asserted as Affirmative Defense No. 13. Affirmative Defense No. 12, which the railroad identifies as a "statute of limitations defense[]", is therefore unnecessary and redundant. Bjornson therefore respectfully asks the Court to Strike Affirmative Defense No. 12 so as to simplify and streamline the litigation.[4] *See* Fed. R. Civ. P. 12(f) (allowing district court to "strike from a pleading . . . any redundant . . . matter").

## II. Affirmative Defense No. 14 – "Plaintiff's claim is barred by the election of remedies provision codified at 49 U.S.C. § 20109(f)."

The FRSA's election-of-remedies provision provides that a railroad employee "may not seek protection under both [section 20109] and another provision of law for the same allegedly unlawful act of the railroad carrier." 49 U.S.C. § 20109(f). By raising this section as an affirmative defense in this action, the railroad argument appears to be based on its assertion that by pursuing his rights under the collective bargaining agreement ("CBA") to file a grievance

---

[3] *See* Bowman Dec., Ex. B.

[4] Bjornson's December 3 letter asked the railroad to withdraw Affirmative Defense No. 13 ("Plaintiff's claims fail, in whole or in part, to the extent barred by the applicable limitations period."). Following receipt of the railroad's December 12 letter, Bjornson elected not to bring a motion to strike Affirmative Defense No. 13. Bjornson's decision in this regard, however, should not be taken as a concession of or statement regarding the merits of the statute of limitations defense. Indeed, Bjornson specifically reaffirms his position that all claims in this action were timely commenced under the applicable statutes of limitations.

Page **4** of **15**

FRCP 12(f) Motion – Memorandum of Law

regarding his suspension, Bjornson has waived his right to allege that the suspension was in violation of his statutory rights under the FRSA.  But this argument has been rejected time and time again by OSHA, the Office of Administrative Law Judges, various district courts around the Country, and every circuit court to have addressed the issue.  *See Reed v. Norfolk Southern Ry. Co.*, 740 F.3d 420 (7th Cir. 2014); *Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014); *Koger v. Norfolk S. Ry. Co.*, No. 1:13-12030, 2014 WL 2778793 (S.D.W.Va. June 19, 2014); *Pfeiffer v. Union Pac. R.R. Co.*, No. 12-CV-2485-JAR-JPO, 2014 WL 2573326 (D. Kansas June 9, 2014); *Ray v. Union Pac. R.R. Co.*, 971 F.Supp.2d 869 (S.D. Iowa 2013); *Mercier v. Union Pac. R.R. Co.*, ARB No. 09-101, 2011 WL 4889278 (ARB Sept. 29, 2011).[5]

The defense bar's continued argument to the contrary notwithstanding, an employee's grievance under a CBA does not constitute seeking protection under "another provision of law" as the term is used in Section 20109(f).  Indeed, the very language of the FRSA indicates that Congress took care to distinguish relief under "any Federal or State law" from relief afforded under "any collective

---

[5] In addition to the above, the question of the propriety of a railroad's assertion that an FRSA claim is barred by 49 U.S.C. § 20109(f) is currently pending before the Sixth Circuit, *Norfolk S. Ry. Co. v. Perez*, No. 14-3274, and the Fourth Circuit, *Lee v. Norfolk S. Ry. Co.*, No. 14-1585.  Like *Reed*, *Grimes*, and *Mercier* (as well as the present case), *Perez* addresses a railroad employee's grievance under the CBA, while *Lee* addresses whether the section precludes an FRSA claim following a separate racial-discrimination claim.  The Fourth Circuit granted the Department of Labor's request to file an *amicus curiae* brief in support of the employee, which was based on the Department's interest in making sure that "the FRSA's election of remedies provision is interpreted accurately and consistently with the remedial purpose of the FRSA."  *See* Bowman Dec., Ex. C.

FRCP 12(f) Motion – Memorandum of Law

bargaining agreement." *See* 49 U.S.C. § 20109(h) ("Nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law *or* under any collective bargaining agreement." (Emphasis added.)). An employee alleging that a suspension from his employment was in violation of a CBA therefore does not constitute seeking protection under "another provision of law" sufficient to trigger the FRSA's election-of-remedies provision, and the railroad's defense on that ground is unavailing.

The Department of Labor's Administrative Review Board has similarly held that the FRSA's election-of-remedies provision does not bar FRSA claims following an internal grievance pursuant to a CBA:

> [T]he plain meaning of "another provision of law" does not encompass grievances filed pursuant to a "collective bargaining agreement," which is not "another provision of law" but is instead a contractual agreement.

*Mercier*, 2011 WL 4889278 at *5. Put another way, the FRSA's election-of-remedies provision "cannot be read to bar concurrent whistleblower and collective bargaining claims," and an employee bringing an FRSA claim is entitled to maintain such an action *regardless* of whether he also pursued a grievance under the Union's CBA. *Id.* at *7. Courts that have reviewed the *Mercier* decision have similarly concluded that the interpretation of Section 20109(f) that the railroad appears to be relying on is not supported by the statutory language or the legislative history. *See, e.g., Ratledge v. Norfolk S. Ry. Co.*, No. 1:12-CV-402,

FRCP 12(f) Motion – Memorandum of Law

2013 WL 3872793, at *12-18 (E.D.Tenn. July 25, 2013) (providing a lengthy analysis of its holding that the grievance was not brought under another provision of law); *Norfolk S. Ry. Co. v. Solis*, 915 F.Supp.2d 32, 43-45 (D.D.C. 2013) holding that FRSA does not clearly and mandatorily require an election of remedies and *Mercier* had at least a colorable reading of the statute); *Battenfield v. BNSF Ry. Co.*, No. 12-cv-213, *2-4 (N.D. Okla. Mar. 26, 2013) (recognizing the colorable arguments from *Mercier* and otherwise deferring decision on the issue). And the ARB recently renewed the authority of the *Mercier* decision and its progeny, rejecting a railroad-employer's argument that *Mercier*'s interpretation of the statute "is contrary to the plain terms of the statute and wrong as a matter of law" as being without merit. *Kruse v. Norfolk S. Ry. Co.*, ARB No. 12-081, 2014 WL 469280, at *3 (ARB Jan. 28, 2014).

Beyond the fact that the election-of-remedies defense has been rejected time and time again, the railroad's argument that Bjornson has sought protection under "another provision of law" by pursuing the matter under the Railway Labor Act ("RLA") is similarly unavailing. While the RLA "establishes a mandatory arbitral mechanism," it does not create *any* rights; rather, it simply provides the mechanism for an employee to "enforce[]" the contractual rights awarded to the employee under the CBA. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). This RLA mechanism for "invoking contract-based rights" is not a forum for addressing "employment-related disputes . . . based on statutory or common law." *Id.* at 253-54. "The distinctly separate nature of these contractual

and statutory rights is not vitiated merely because both were violated as a result of" a similar factual occurrence. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745-46 (1981).

Analogizing the RLA to other federal labor laws, the Court can easily conclude that there is no "suggestion that Congress, in adopting [the RLA] wished to give the substantive provisions of private agreements the force of federal law." *See Hawaiian Airlines*, 512 U.S. at 260 (citation and quotation omitted). Indeed, to hold otherwise would suggest that *every* private contract between diverse parties takes on the effect of federal law simply because federal law provides a forum for resolution of disputes arising under that contract. Bjornson did not "seek protection" under the RLA by pursuing his internal grievance any more than a party to a federal case seeks protection under 28 U.S.C. §§ 1291, 1294(1) when filing an appeal with the appropriate circuit. *See Reed*, 740 F.3d at 424 (reaching similar conclusion).

The *Reed* court rejected the very argument seemingly advanced by the railroad here, stating that *even if* one were to assume that the RLA was sufficient to satisfy the "another provision of law" language of Section 20109(f), "it is strained to say that [a railroad employee] sought protection under [the RLA] by appealing his grievance to the special adjustment board." 740 F.3d at 425. "The election-of-remedies provision only bars railroad employees from seeking duplicative relief under overlapping antiretaliation or whistleblower statutes," the court concluded; "it does not diminish their rights or remedies under collective

bargaining agreements in *any* way." *Id.* at 426 (emphasis added); *see also Grimes*, 746 F.3d at 191 (citing *Reed* with approval and adopting the holding that an employee pursuing a grievance under a CBA seeks protection under the agreement and *not* the RLA).

This reading of the statute finds further support in the legislative history of its enactment. The FRSA was enacted in 1970 and amended in 1980 to include protections for employees who report safety concerns, oppose unsafe practices, and/or refuse to work in hazardous conditions. Pub. L. No. 96-423, § 10, 94 Stat. 1811 (1980); *Norfolk S. Ry. v. Solis*, 915 F.Supp.2d 32, 37 (D. D.C. 2013). At the time of the 1980 amendments, disputes concerning discrimination of such protected conduct could only be resolved in RLA arbitration. The amendments enacted in 1980 included the subject election-of-remedies for the first time, then codified at 45 U.S.C. § 441(d). In enacting the provision, however, Congress was only concerned that some rail workers were already potentially qualified for safety whistleblower protection under the OSH Act under 29 U.S.C. § 660(c) and its implementing regulation at 29 C.F.R. § 1977.12(b)(2). As stated by Congressman Florio:

> We also agreed to a provision clarifying the relationship between the remedy provided here [in the FRSA] and a possible separate remedy under [the OSH Act]. Certain railroad employees, such as employees working in shops, could qualify for both the new remedy provided in [FRSA], or an existing remedy under [OSH]. It is our intention that the pursuit of remedy should bar the other, so as to avoid resort to

> two separate remedies, which would only result in unneeded litigation and inconsistent results.

126 Cong. Rec. 26,532 (1982).

While the FRSA was restyled in 1994 and again in 2007, the courts have consistently recognized that these changes were non-substantive and that the meaning of the provision has remained constant. *See Reed*, 740 F.3d at 420 n.5. Accordingly, the ARB has recognized that "Congress apparently intended the original election of remedies provision to bar resort to both FRSA and [OSH Act] remedies," and nothing more. *Mercier*, 2011 WL 4889278 at *3. And the Seventh Circuit has noted that the "speech by Congressman . . . Florio [recognizes that § 20109(f)] is firmly rooted to the 'existing remedy' under the [OSH] Act," and is not "a broad purpose to prevent *all* unneeded litigation and inconsistent results." *Reed*, 740 F.3d at n.4. This limitation of the election-of-remedies provision is similarly held by the Federal Railroad Administration. *See* 73 Fed. Reg. 8455 (2008) ("[The] election of remedies provision is intended to prevent . . . [an] employee . . . seeking protection under both . . . [§] 660(c) and [§] 20109."). Put another way, Congress *never* intended to prohibit railroad employees from pursuing grievances under their CBAs at the same time as pursuing an administrative or federal court action for violation of the FRSA.

Further, the 2007 amendments to Section 20109 also added sections (g) and (h), which provide that "[n]othing in this section . . . diminishes any other safeguards against discrimination . . . provided by Federal . . . law" and "[n]othing

in [Section 20109] shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal . . . law," respectively.  49 U.S.C. § 20109(g), (h).  These subsections were enacted to help liberalize employee rights, and they preserve Bjornson's right to challenge his suspension under the CBA without barring his remedy under the FRSA.  As the Seventh Circuit recognized:

> [I]n 2007, Congress added a provision to FRSA affirmatively disclaiming *any* intention to diminish railway employees' rights. . . . [The railroad] argues that its interpretation does not "diminish" any employee rights or remedies because an employee always remains free to bring a FRSA claim or a grievance, just not both.  We suppose this may not literally be a diminution of either remedy, although it is a fine distinction—one that sits *uneasily* with the saving clause's broad language.  By contrast § 20109(h) fits "snugly" with our reading of § 20109(f).

*Reed*, 740 F.3d at 424-26 (citations omitted) (first emphasis added).

Furthermore, not only did Bjornson's grievance procedure under the applicable CBA not "seek protection under . . . another provision of *law*," but it also did not concern "the same allegedly unlawful act" as his current FRSA proceeding.  The CBA grievance was based on the railroad's alleged breach—intentional or otherwise—of a private collective bargaining agreement.  In contrast, this FRSA action is based on the railroad's suspension of Bjornson's employment that was, at least allegedly, in violation of a federal statute.  Separate and distinct from any provision of a CBA, the railroad had a federal-law obligation not to "discharge, demote, suspend, reprimand, or in any other way discriminate against [Bjornson] if such discrimination is due, in whole or in part," to

engagement in protected activities, including following a doctor's treatment plan. 49 U.S.C. §§ 20109(a), 20109(c); *see also Hawaiian Airlines*, 512 U.S. at 258 (recognizing employer's obligation not to fire employees in retaliation for whistleblowing exists "wholly apart from any provision" of a CBA). An intentional act done by the railroad in response to a protected activity is entirely different than an allegedly unintentional breach of contract. Bjornson's FRSA claim therefore targets different allegedly unlawful acts than the grievance under the CBA, and the railroad's election-of-remedies defense is therefore unavailing as a matter of law.

Regardless of which aspect of Section 20109(f) the Court bases its decision, the result is clear. The FRSA's election-of-remedies provision simply does not preclude Bjornson's FRSA action merely because Bjornson challenged his suspension under the CBA. The railroad's affirmative defense that the claim is barred by Section 20109's election-of-remedies provision is therefore wholly unavailing, legally insufficient, and should be stricken pursuant to Rule 12(f).

### III. Affirmative Defense No. 15 – "This court lacks jurisdiction to hear Plaintiff's claims and/or Plaintiff has failed to state a claim due to his failure to comply with the requirements set forth in 29 C.F.R. § 1982.114."

The railroad also challenges this Court's jurisdiction to hear the case because of Bjornson's alleged failure to comply with the requirements of 29 C.F.R. § 1982.114. Under the regulation, a complainant is to file a notice of intention to file a federal court complaint fifteen days before such complaint is

filed.  29 C.F.R. § 1982.114(b).  It is uncontroverted that Bjornson did not provide the 15-day notice to the Department of Labor, however caselaw establishes that this fact is of no consequence to this action.

The plain language of the statute unquestionably provides that a railroad employee has the right to bring an original action at law in United States District Court if the Secretary of Labor has not issued a final decision within 210 days of the complaint being filed.  49 U.S.C. § 20109(d)(3).  The statute does not contain any advance notice requirement; the Federal Court acquires subject-matter jurisdiction 210 days after the administrative complaint is filed absent a final decision from the Secretary of Labor, assuming that the delay is not due to the complainant acting in bad faith.[6]  And the Department of Labor cannot, through regulation, limit the jurisdiction of an Article III Court.  *See Ramey v. Bowsher*, 9 F.3d 133, 137 n.3, 137 n.7 (D.C.Cir. 1993) (recognizing that interpretation of statutes granting jurisdiction to Article III courts is the exclusive province of the courts and that agency interpretations are irrelevant), *cited in Austerman v. Behne, Inc.*, No. 10-4502-JRT-FLN, 2011 WL 1598419, at *3 (D.Minn. April 7, 2011), *adopted* 2011 WL 1598377 (D.Minn. April 28, 2011).

The earliest case discussing this issue that Bjornson's research has identified is *Pfeifer v. Union Pac. R.R. Co.*, No. 12-CV-2485-JAR-JPO, 2013 WL

---

[6] The railroad does not, and indeed cannot, contest that 210 days had passed from the date the claim was administratively initiated and that the Secretary of Labor had not issued a final decision prior to Bjornson filing his Federal complaint on October 31, 2014.  Nor does the railroad assert that the delay was due to any bad faith on Bjornson's part.

1367054 (D.Kansas April 3, 2013).  In *Pfeifer*, the District Court considered the railroad's argument that it lacked jurisdiction pursuant to the regulation, the exact claim asserted under the railroad's Affirmative Defense No. 15 here.  *See* 2013 WL 1367054 at *3.  The Court concluded that "the statute contains no reference to a notice requirement, and thus [29 C.F.R. § 1982.114(b)] has no statutory basis in the law."  *Id.* at *4.  The Court went on to specifically find that lack of notice to the Department of Labor does not deprive a Federal Court of Jurisdiction.  *Id.* at *5.  This Court cited *Pfeifer* with approval approximately a year later, "agree[ing] with other courts . . . that an employee's failure to give the 15 days' notice does not deprive the court of jurisdiction"  *Gunderson v. BNSF Ry. Co.*, __ F.Supp.2d __, 2014 WL 2945762 at *2 n.2 (D.Minn. June 30, 2014) (citations omitted); *see also Glista v. Norfolk S. Ry. Co.*, No. 13-04668, 2014 WL 1123374 at *6 (commenting that "it is clear that failure to provide such notice [as articulated in Section 1982.114] is not a binding requirement, preclusive to exercising the right to de novo review" by Federal Courts).

Caselaw on this point is clear: a railroad employee's failure to provide the Department of Labor with the notice articulated in 29 C.F.R. § 1982.114 does not pose a jurisdictional question.  The railroad's efforts to muddy the water by citing to the regulation is nothing more than a red herring.  The Courts, including the District of Minnesota, have explicitly rejected the argument that the 15-day notice requirement of 29 C.F.R. § 1982.114 is in any way a prerequisite for Article III Federal Court jurisdiction over an FRSA claim.  Bjornson therefore respectfully

FRCP 12(f) Motion – Memorandum of Law

asks this Court to grant his motion to strike Affirmative Defense No. 15 as legally insufficient.

## CONCLUSION

Based on firmly established caselaw and the plain language of relevant statutory law, the railroad's Affirmative Defenses Nos. 12, 14, and 15 are unavailable as a matter of law. Bjornson therefore respectfully asks this court to grant his motion to strike pursuant to Fed. R. Civ. P. 12(f).

                                          Respectfully submitted,

                                          YAEGER & JUNGBAUER BARRISTERS, PLC

Dated: December 17, 2014       */s/ Christopher W. Bowman*
                                          Louis Jungbauer, MN #134818
                                          Christopher W. Bowman, MN #0389933
                                          Kelly Nyquist, MN #393385
                                          2550 University Ave. W., Ste. 345N
                                          St. Paul, MN 55114
                                          Telephone: (651) 288-9500
                                          Facsimile: (651) 288-0227
                                          ljungbauer@yjblaw.com
                                          cbowman@yjblaw.com
                                          knyquist@yjblaw.com

                                          **ATTORNEYS FOR PLAINITFF**