**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| LONNIE BJORNSON and<br>SHARON BJORNSON,<br><br>                     Plaintiffs,<br><br>v.<br><br>SOO LINE RAILROAD COMPANY, *a Minnesota corporation d/b/a Canadian Pacific Railway*, and GLENWOOD HOSPITALITY, INC., *a Minnesota Corporation d/b/a Scottwood Motel*,<br><br>                     Defendants. | Civil No.  14-4596 (JRT/SER)<br><br>**MEMORANDUM OPINION<br>AND ORDER GRANTING MOTION<br>FOR PARTIAL SUMMARY<br>JUDGMENT** |

---

Michael P. McReynolds, **TELLO LAW FIRM**, 2150 Third Avenue North, Suite 10, Anoka, MN  55303, and David A. Brandis, **YAEGER & JUNGBAUER BARRISTERS, PLC**, 2550 University Avenue West, Suite 345N, St. Paul, MN  55114, for plaintiffs.

Tracey Holmes Donesky and Margaret M. Bauer Reyes, **STINSON LEONARD STREET LLP**, 150 South Fifth Street, Suite 2300, Minneapolis, MN  55402, and Steven J. Erffmeyer, **ARTHUR, CHAMPMAN, KETTERING, SMETAK & PIKALA, PA**, 81 South Ninth Street, Suite 500, Minneapolis, MN  55402, for defendant Soo Line Railroad Company.

Gregory J. Young, **GOETZ & ECKLAND P.A.**, Banks Building, 615 First Avenue Northeast, Suite 425, Minneapolis, MN  55413, for defendant Glenwood Hospitality, Inc.


Plaintiffs Lonnie Bjornson ("Bjornson") and Sharon Bjornson bring this action against Bjornson's employer, Soo Line Railroad Company, doing business as Canadian Pacific Railway, ("Canadian Pacific"), and Glenwood Hospitality, Inc. ("Glenwood Hospitality").  Plaintiffs allege several state and federal claims based on Bjornson's

injury from slipping in the shower at a hotel owned by Glenwood Hospitality, and a 5-day suspension he received from Canadian Pacific after he called in sick to attend a chiropractic session almost two years after his injury. Canadian Pacific moves for summary judgment on Count II of Bjornson's complaint, in which Bjornson alleges that this disciplinary action violated the Federal Rail Safety Act ("FRSA"). Because the Court finds that Bjornson did not engage in protected activity, Bjornson's FRSA claim fails, and the Court will grant Canadian Pacific's motion.

**BACKGROUND**

**I.    FACTUAL HISTORY**

Canadian Pacific "provides freight rail transportation services in several states, including Minnesota and North Dakota." (Decl. of Amanda Cobb ("Cobb Decl.") ¶ 3, May 31, 2016, Docket No. 61.) Canadian Pacific is "largely unionized" and its union workers, including its conductors, "are governed by applicable collective bargaining agreements." (*Id.* ¶¶ 3-4.) Canadian Pacific contracted with Glenwood Hospitality to provide rooms at a set rate for its employees at the Scotwood Motel in Glenwood, Minnesota. (*See* Aff. of David A. Brandis ("Brandis Aff."), Ex. B, June 21, 2016, Docket No. 66.)

Bjornson began working for Canadian Pacific as a conductor trainee in 1997, and after a few months of training, he became a conductor. (Decl. of Greta Bauer Reyes ("Reyes Decl."), Ex. A ("Bjornson Dep.") at 36:14-24, May 31, 2016, Docket No. 62; Cobb Decl. ¶ 7.) The conductor position includes a requirement to "be available on call,

24 hours per day, 7 days per week including weekends and holidays." (Reyes Decl., Ex. C.)

### A. BJORNSON'S INJURY

On November 3, 2011, Bjornson worked on freight run from Enderlin, North Dakota, to Glenwood. (*Id.* at 296:18-297:13.) Bjornson stayed at the Scotwood motel, where several anti-skid strips were missing from the shower in his room. (*Id.* at 298:5-9, 219:6-9; Brandis Aff., Ex. C.) Bjornson slipped and fell in the shower, hitting the side of the tub with his left shoulder and the back of the tub with his head. (Bjornson Dep. at 305:4-6, 306:4-307:9.) Bjornson completed a guest accident report and filled out an injury report form with his employer. (*See* Reyes Decl., Ex. S; *id.*, Ex. T.) Bjornson still worked his shift on November 3, and the following several days. (Bjornson Dep. at 237:14-25.) Bjornson stated that he did not feel any aches and pains when he first returned to work, but three or four days later, he began experiencing stiffness and soreness in his neck and shoulder. (*Id.* at 320:3-7.)

### B. BJORNSON'S 2011 MEDICAL TREATMENT

On November 9, 2011, Bjornson sought medical treatment from a physician's assistant, Cristy Brosowske.[1] (*Id.* at 152:3-19.) Brosowske noted a bruise on Bjornson's left upper arm, and Bjornson reported neck pain and upper back pain, as well as continuous pain radiating down his upper right arm. (Reyes Decl., Ex. W.) Brosowske

---

[1] In the record, Cristy Brosowske is also referred to by a previous name, Cristy Selzler, (Reyes Decl., Ex. V at 6:17-7:10), but, the Court will refer to her by her current name.

suspected chronic tendonitis was the cause of Bjornson's shoulder pain, and she recommended rest, ice, and heat. (*Id.*) Brosowske also directed Bjornson to check back with the office in two to three weeks and return for a follow up appointment if his condition was not improving. (*Id.*)

Bjornson did not return to work after the November 9 appointment while he rested due to his neck and shoulder pain. (Reyes Decl., Ex. Y; *id.*, Ex. V ("Brosowske Dep.") at 29:6-19.) Bjornson returned for a follow-up medical appointment on November 23, 2011, where he reported occasional pain in his neck and back. (*Id.*, Ex. Z.) Brosowske diagnosed Bjornson with cervical strain and bilateral shoulder tendonitis, and also noted a history of degenerative joint disease and degenerative disk disease of the cervical spine and degenerative joint disease of the shoulders. (*Id.*; Brosowske Dep. at 35:4-10.) Brosowske referred Bjornson to physical therapy to evaluate if he could return to work. (Brosowske Dep. at 35:21-36:5.) On November 30, 2011, Bjornson again visited Brosowske, and she completed a supplemental doctor statement in which she found that Bjornson's condition – a cervical strain, shoulder strain – was improving, and she estimated that Bjornson would be ready to return to work on December 14, 2011, after two weeks of physical therapy. (Reyes Decl., Ex. CC; Brosowske Dep. at 43:8-45:2.)

Bjornson returned for a follow-up appointment on December 12, 2011, and Brosowske found that his strain and shoulder tendonitis had both resolved, that he had "rehabbed to baseline functioning," and that he could "return to work unrestricted" as anticipated. (Reyes Decl., Ex. DD; Brosowske Dep. at 46:19-48:22.) Brosowske also noted Bjornson's history of degenerative joint disease, which had not resolved because it

was a preexisting chronic problem. (Reyes Decl., Ex DD; Brosowske Dep. at 47:14-48:2.) Brosowske wrote that Bjornson should contact her office if problems arose again in the future. (Reyes Decl., Ex. DD; Brosowske Dep. at 49:18-22.) Brosowske testified that Bjornson's medical records did not suggest she made any recommendation for Bjornson to receive chiropractic treatment, (Brosowske Dep. at 22:20-23:7, 31:18-21; 36:6-11; 50:2-5), and Bjornson admitted that Brosowske did not refer him to chiropractic treatment, (Bjornson Dep. at 154:6-13, 158:1-5, 159:6-21, 162:5-8).

### C. BJORNSON'S 2013 CHIROPRACTIC TREATMENT

On March 21, 2013, a year and a half after his injury, Bjornson returned to a chiropractor he had seen somewhat regularly prior to his fall – from June 2009 until October 27, 2011. (Bjornson Dep. at 170:2-171:16; *see also* Reyes Decl., Ex. EE at 11-28[2].) Bjornson testified that he returned to the chiropractor due to recurring neck pain. (Bjornson Dep. at 171:21-24.) The chiropractor, Christopher Danduran, wrote in his notes from that first return visit that Bjornson reported "continued chronic right shoulder pain," "moderate neck pain on the right; unchanged from the last treatment," and "mild restricted neck motion on the left, which is a minimal improvement over his previous visit." (Reyes Decl., Ex. EE at 27.) Danduran also noted that Bjornson recalled "having a few falls on the ice since last visit (1.5 years ago) where he underwent physical therapy for." (*Id.*)

---

[2] The Court will cite to pages within this document using the last two digits of the bates number.

Bjornson continued to see Danduran, attending ten appointments from March through the end of June 2013. (*Id.* at 27-33.) During several of those appointments, Danduran noted that Bjornson reported various causes for his pain, including lifting boxes, long rides on his motorcycle, and sleeping in unusual positions. (*Id.* at 28, 29, 31, 32.) The first time Danduran made any note of Bjornson's November 2011 injury was during an October 23, 2013, visit. (*Id.* at 36-37.)

### D.   BJORNSON'S DISCIPLINE

After his September 26, 2013, chiropractic appointment, Bjornson called and scheduled another appointment for September 30, 2013. (Bjornson Dep. at 173:10-174:7; Reyes Decl., Ex. FF at 25.) Bjornson was on the extra list[3] for September 30, 2013, and he was required to be available to cover shifts or "protect service" on that date. (Bjornson Dep. at 179:3-7.) Bjornson promptly attempted to request the day off several times, but he gave up after being placed on hold, (*id.* at 185:5-186:2, 189:18-192:10); finally, Bjornson got through the night before his appointment and requested the day off, (*id.* at 192:11-22). Bjornson's request was denied, but he chose to attend his appointment and called in sick on September 30, 2013. (*Id.* at 180:3-11, 202:15-20.)

---

[3] The extra list, also referred to as the "Guaranteed Extra Board/Guaranteed Extra List," is a list of employees that can fill in for "vacancies for employees who are off on vacation or approved layoffs" to "make sure that [Canadian Pacific] has people to staff trains and Yard engine assignments." (Decl. of Justin Dittrich-Bigley ("Dittrich-Bigley Decl.") ¶ 3, May 31, 2016, Docket No. 60.) The employees on the extra list "are paid a minimum monthly payment for protecting the[] board[] and being available for call all hours of the day." (*Id.*)

The day after Bjornson's appointment, on October 1, 2013, Canadian Pacific issued a letter notifying Bjornson to appear for a "formal investigation/hearing" into his "failure to protect service" the day before and his "alleged lay-off under false pretenses" on September 29, 2013. (Reyes Decl., Ex. GG.) Following a hearing, Canadian Pacific informed Bjornson by letter that it found he had violated the rule regarding reporting injuries and that he would serve a five-day suspension once he returned to active duty. (*Id.*, Ex. II.)

## II. PROCEDURAL HISTORY

On March 26, 2014, Bjornson filed a complaint with the Occupational Safety and Health Administration ("OSHA") challenging his 5-day suspension as retaliation for following his physician's treatment plan. (*See id.*, Ex. JJ at 42.) Following an investigation, OSHA found no reasonable cause to believe Canadian Pacific violated 49 U.S.C. § 20109, concluding:

> Complainant did not engage in protected activity on November 3, 2011, when he reported a non-work-related injury to his supervisor, nor did he engage in protected activity when he sought treatment for the non-work-related injury on September 30, 2013. Therefore, a prima facie allegation has not been established. Consequently, this complaint is hereby dismissed.

(*Id.*, Ex. MM at 11.) Bjornson objected to this decision, on June 26, 2014, (*id.*, Ex. NN), and advised Canadian Pacific of his intention to file a complaint in federal court on October 22, 2014, (*id.*, Ex. OO).

On October 31, 2014, Bjornson filed his complaint in federal court. (Compl., Oct. 31, 2014, Docket No. 1.) Bjornson filed an amended complaint on February 27,

2015. (Am. Compl., Feb. 27, 2015, Docket No. 32.) Bjornson alleges a negligence claim under the Federal Employers' Liability Act ("FELA") in Count I, a claim under the FRSA in Count II, a negligence claim against Glenwood Hospitality in Count III, and loss of consortium against Glenwood Hospitality in Count IV.

On May 31, 2016, Canadian Pacific filed this motion seeking summary judgment only as to Bjornson's FRSA claim, found in Count II of his complaint. (Mot. for Summ. J. of Count II, May 31, 2016, Docket No. 57.)

## ANALYSIS

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.     BJORNSON'S FRSA  CLAIM

Canadian Pacific challenges Bjornson's FRSA claim, brought under 49 U.S.C. § 20109(c)(2).  In pertinent part, § 20109(c)(2) prohibits a railroad carrier from "disciplin[ing] or threaten[ing] discipline to, an employee for . . . following orders or a treatment plan of a treating physician."  To establish a prima facie case under this provision, Bjornson must show that "(i) he engaged in a protected activity; (ii) [Canadian Pacific] knew or suspected, actually or constructively, that he engaged in the protected activity; (iii) he suffered an adverse action; and (iv) the circumstances raise an inference that the protected activity was a contributing factor in the adverse action." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 789 (8th Cir. 2014) (citing 49 U.S.C. § 42121(b)(2)(B)(i); 29 C.F.R. § 1982.104(e)(2)).  Even if Bjornson establishes this prima facie case, however, Canadian Pacific can nonetheless avoid liability if it proves, "by clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of [Bjornson's] protected activity."  *Id.* (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)) (internal brackets omitted).

Canadian Pacific argues that Bjornson did not engage in protected activity because his chiropractor is not a "treating physician," and therefore, Bjornson's September 30 appointment was not pursuant to any "order[] or . . . treatment plan of a treating physician." 49 U.S.C. § 20109(c)(2).  As discussed above, Bjornson does not dispute that he was never referred to a chiropractor by his treating physicians following his November 2011 injury; and thus, Bjornson relies solely on his chiropractor's treatment plan.

Neither party provides any case law interpreting the term "physician" in § 20109(c)(2). Canadian Pacific advocates that "treating physician" is properly interpreted to refer to medical doctors, which would not include chiropractors. Canadian Pacific states that if Congress intended to include chiropractors in the statute, it could have done so; Congress used the broader term "health care providers" in the Family and Medical Leave Act, and that term was later defined by regulation to include chiropractors in specific circumstances. *See* 29 U.S.C. § 2611(6); 29 C.F.R. § 825.125(b)(1) (including chiropractors as capable to provide health care services only when providing "treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist").

Bjornson acknowledges that a chiropractor is not a medical doctor, but argues that the statute should be interpreted to cover chiropractors as well as medical doctors. Bjornson notes the Joint Commission, a credentialing body for hospitals and healthcare organizations, recently recognized chiropractors as physicians. (Brandis Aff., Ex. I.) However, this decision occurred in 2014 and thus it was not considered by Congress when it enacted § 20109(c)(2) in 2008; additionally, the recent decision to recognize chiropractors as physicians suggests that they were not previously considered physicians by the Joint Commission.

Congress certainly could have chosen other, broader terms such as "health care providers," but it chose the limited word "physician," which Merriam-Webster's Dictionary defines as "one educated, clinically experienced, and licensed to practice medicine," *Merriam-Webster's Collegiate Dictionary* 935 (11th ed. 2007), and Oxford's

Dictionary defines as "a person qualified to practice medicine," *Oxford American Dictionary* 1321 (3rd ed. 2010). There is no indication that the term "physician" was meant to cover additional professionals besides medical doctors, and the Court is not persuaded otherwise based on the Joint Commission's decision to begin recognizing chiropractors as physicians in 2014.

Bjornson also suggests that limiting the term "physicians" to medical doctors would run contrary to Congress's intent in establishing FRSA because much of railroad employees' ongoing treatment would include physical therapy, and if a chiropractor is not a physician, then a physical therapist also likely is not a physician. The Court need not decide whether a physical therapist would qualify as a treating physician under the statute. But the Court is not persuaded by Bjornson's policy argument because, in many cases, a medical doctor initially refers a patient to a physical therapist, in which case one could argue that the physical therapy plan would still be considered part of the medical doctor's order or treatment plan. Here, however, Bjornson independently decided to see a chiropractor, without a referral from a medical doctor, and thus, he could not rely on such an argument. The Court is not convinced that the ordinary meaning of "physician" runs counter to Congress's intent.

The Court finds that Bjornson did not engage in protected activity under the statute because he was not following the treatment plan or order of a treating physician.[4]

---

[4] Canadian Pacific also argued that Bjornson's did not engage in protected activity because his treatment was not for an "on-duty injur[y.]" *See Port Auth. Trans-Hudson Corp. v. Sec'y, U.S. Dep't of Labor*, 776 F.3d 157, 169 (3d Cir. 2015) (holding that § 20109(c)(2) covers

(Footnote continued on next page.)

Accordingly, Bjornson's FRSA claim fails, and the Court will grant Canadian Pacific's motion.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Canadian Pacific's Motion for Summary Judgment of Count II [Docket No. 57] is **GRANTED**.  Count II is **DISMISSED with prejudice**.

DATED:  February 21, 2017  
at Minneapolis, Minnesota.

                                     s/ John R. Tunheim  
                                     JOHN R. TUNHEIM  
                                     Chief Judge  
                                     United States District Court

_____  
(Footnote continued.)

only treatment for "on-duty injuries").  Because the Court finds that Bjornson was not following a treatment plant of a treating physician, it need not decide whether Bjornson's injury would be considered on-duty for § 20109(c)(2) purposes.  Nevertheless, the Court notes that no court has interpreted when an injury occurs "during the course of employment," under § 20109(c), and it is not clear why that language would be interpreted differently than FELA, which covers "injuries sustained in the course of employment," *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011), and can include injuries sustained in employer-provided housing, *see Empey v. Grand Trunk W. R.R. Co.*, 869 F.2d 293, 295-96 (6th Cir. 1989) (finding that "an employee who is injured while he avails himself of housing which his employer has provided and implicitly encouraged him to use is within the scope of his employment for the purposes of FELA"); *see also Lockard v. Missouri Pacific R. Co.*, 894 F.2d 299, 304 (8th Cir. 1990) (citing *Empey* with approval).

Additionally, because the Court finds Bjornson has not shown he engaged in protected activity, the Court need not reach Canadian Pacific's other arguments that Bjornson's treatment was not a contributing factor to his suspension and that Canadian Pacific would have reached the same decision regardless of any protected activity.